IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIM H. TOWNSEL, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 08-AR-2276-S |
| | } | |
| HOMEWOOD CITY BOARD OF EDUCATION, | } } | |
| | } | |
| Defendant. | | |

**MEMORANDUM OPINION**

Plaintiff, Kim Townsel ("Townsel"), sues defendant, Homewood City Board of Education ("Homewood" or "the Board"), alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 621 *et seq.*, in connection with Homewood's non-renewal of Townsel's employment as a teacher in the Homewood city school system. Before the court is Homewood's motion for summary judgment. For the reasons that follow, Homewood's motion will be granted, and the action will be dismissed with prejudice.

**FACTS**[1]

---

[1] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to the non-moving party. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not

1

Townsel was hired as a Family Consumer Science Teacher at Homewood High School for the 2004-2005 school year. (Doc. 24-1 at 3). Townsel was interviewed and recommended for the position by Dr. Jodi Newton ("Newton"), the Homewood Superintendent of Education. *Id.* at 9. On the date of Townsel's hire, Dyar Carlisle was Principal of Homewood High School. (Doc. 27 at 6). At the time she was hired, Townsel was forty-four (44) years old. (Doc. 24-1 at 3). At the end of the 2004-2005 school year, Vic Wilson ("Wilson") replaced Dyar Carlisle as principal of Homewood High School. (Doc. 27 at 6). Townsel's employment was renewed for the school year 2005-2006, and again for the school year 2006-2007. (Doc. 24-1 at 3). For all three years Townsel was employed by Homewood, she was employed on "probationary" status. A teacher on probationary status has no legal expectation of continued employment. (Doc. 24 at 3). Townsel's employment was not renewed for the 2007-2008 school year. Had she been renewed for her fourth year, she would have been granted "tenured" status pursuant to Ala. Code § 16-24-12. (Doc. 24 at 2). Unlike a teacher on probationary status, a tenured teacher has a protected expectation of re-employment. *Id.* at 3. For this reason, school systems are more careful and cautious when considering a renewal that will result in the granting of tenured status. The motivation for Homewood's decision not to renew

---

entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553. Conclusory allegations or legal conclusions are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

Townsel, and thus prevent her from becoming tenured, is the subject of this case. Townsel claims that Homewood's non-renewal decision was made because of her age. Homewood argues that it was motivated by several nondiscriminatory reasons, citing several incidents involving Townsel that Homewood claims reflected poorly on her character and/or ability to teach.

**The special-needs student incident**

The first incident cited by Homewood involved the attempted placement of a special-needs student in Townsel's classroom. The student was brought to Townsel's classroom for enrollment in her class. (Doc. 24-7 at 10-13; Doc. 26 at 19-21). Townsel initially refused to allow the student into her classroom, explaining that she did not have a desk for the new student. *Id*. Principal Wilson was alerted to the situation, and went down to speak with Townsel. *Id.* Wilson temporarily sent the student to the counselor's office, and retrieved an extra desk. *Id.* Wilson thereafter placed the student in Townsel's class. *Id.* Following the special-needs student incident, Townsel requested a meeting to discuss the situation. *Id.* Townsel brought an Alabama Education Association ("AEA") representative with her to the meeting, as was her right under Alabama law. *Id.* At the meeting, Townsel voiced two concerns about placing the special-needs student in her class, one, that the student may not be able to keep up with the rest of the class and thus may slow the pace of the classroom, and two, that there was

not enough space for the new student. *Id.* Wilson explained that the student's individual education plan ("IEP") called for him to be placed in Townsel's class, and that the IEP was binding. *Id.* Wilson testified that he thought Townsel handled the situation poorly, and that in his opinion she should have let the student into her classroom and later raised her concerns to Wilson privately. *Id.* After the meeting, Townsel reluctantly assented to the student being added to her class. *Id.*

**The "ghetto wedding" incident**

The second incident involved an activity in Townsel's class in which the class was to plan and to put on a mock wedding. Townsel asked the class to suggest themes and the class decided they would like to have a "ghetto wedding". (Doc. 26 at 21). A few days before the mock wedding was to take place, Townsel sent an email to Wilson that read as follows:

> Our wedding is February 28 during period seven. Our theme is Ghetto and our colors are Black and Red. The menu will include (baked) Chicken and Waffles.
>
> The students want to know if they can wear red and black bandanas or hats. I told them probably not since it was gang wear, but that I would ask.
>
> P.S. You are all invited!  It should be ... interesting!

(Doc. 26-1). Wilson responded to Townsel's email, telling her that he thought the "ghetto" theme was inappropriate and needed to be changed. *Id.* Townsel obliged and changed the theme of the wedding.

**Townsel's Emails**

During her employment, Townsel sent a number of emails to the faculty and staff at Homewood High that caused friction or ill-will. The first such email was sent by Townsel to address other teachers walking through her room to use an ice machine. (Doc. 24-1 at 18). In the email Townsel asked other teachers and staff not to walk through her room while she was conducting class. *Id.* Another email addressed a water leak in Townsel's room. Townsel testified that she had complained about the water leak and the puddle the leak had caused for approximately one month, but nothing had been done to address it. *Id.* One day Townsel slipped in the water and fell. She then sent an email to the faculty and staff, stating, "I fell down. Glad it wasn't one of the students. Can we get somebody to come and get the water up?". Homewood contends that the tone of Townsel's emails was hostile and inappropriate for a professional environment.

**Townsel's performance evaluations**

Townsel was evaluated at least once each year during the three years she taught at Homewood. In her first evaluation, filled out by John Finley ("Finley") on December 17, 2004, every category on the evaluation form was marked as an "area of strength" except for the categories titled "maintains positive flow of communication students, parents, faculty, and staff," and "uses sound judgment"; both of those categories were marked "needs improvement". (Doc. 24-

5

8 pg. 2). Townsel's next three evaluations, conducted May 23, 2005, December 6, 2005, and June 2, 2006, contained only one "needs improvement" mark among them. *Id* at 3-5. The December 6, 2005 evaluation had "needs improvement" under the "uses technology appropriately" category. *Id.* Otherwise, the evaluations were all marked with "area of strength". *Id.*

Townsel's evaluation conducted by Vic Wilson on February 8, 2007, was markedly different than the previous three. It contained five (5) marks for "needs improvement", four of which were under the categories of "communication", "professionalism", and "interpersonal relations". *Id.* at 6. Townsel's next evaluation, submitted on May 1, 2007, by assistant principal Missy Brooks ("Brooks"), contained seven (7) marks in the "needs improvement" category. *Id.* at 7. Again, these marks were concentrated in the "professionalism" and "interpersonal relations" category. *Id.* Brooks also wrote notes on the May 1st evaluation. One of Brooks's remarks read, "be careful of the tone of emails", another stated "be careful to pick themes and activities that are not offensive (i.e. Ghetto Wedding)". Townsel sent Brooks an email on May 2, 2010, attempting to address the concerns brought up in the evaluation. (Doc. 24-6 at 27-28). In regards to the concerns about one of her emails, Townsel wrote, "I apologize if the tone of that email was not acceptable... Not one person from the administration asked if I was harmed by my fall, which I personally find

6

offensive... Perhaps my frustration at having to request assistance several times shows in my emails. I will extend my efforts to be repetitive rather than display frustration." *Id.*

**The non-renewal decision**

In the early spring of 2007, Newton, Wilson, and Dr. Betty Winches ("Winches"), the Assistant Superintendent of the Homewood City Board of Education, met to discuss whether or not Townsel should be renewed for the 2007-2008 school year. (Doc. 24-4 at 3). They discussed the special-needs student incident and the "ghetto wedding" incident, and their concerns about Townsel's interpersonal communications with other faculty and staff, including the aforementioned emails. They also reviewed Townsel's performance evaluations. Newton, Wilson, and Winches made a decision to recommend that Townsel not be renewed for the 2007-2008 school year. Wilson then recommended to the Board that Townsel not be renewed. (Doc. 24-4 at 3). The Board accepted and adopted Wilson's recommendation, and on May 23, 2007, Townsel was notified that her employment with Homewood was not being renewed. (Doc. 24 at 2). Pursuant to Ala. Code § 16-22-15, Homewood posted notice of the vacancy created by Townsel's non-renewal. *Id.* After interviewing applicants, Homewood hired two new teachers to replace Townsel, both younger than 40. (Doc. 26 at 2).

Townsel filed a charge with the EEOC on November 7, 2007, alleging age discrimination. (Doc. 24-2 at 9). Townsel received her

7

notice of right to sue from the EEOC on September 11, 2008, and she filed this action on December 10, 2008.

## **DISCUSSION**

There is no direct evidence of any discriminatory motive by Homewood. Therefore, Townsel's claims are analyzed under the burden shifting analysis set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981). *See Reeves v. Standard Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097 (2000). Under the *McDonnell-Douglas* framework, the plaintiff must first make out a *prima facie* case of age discrimination. *Id.* Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for taking the adverse employment action. *Id.* Once the defendant meets its burden of production, the plaintiff must present evidence showing that defendant's proffered nondiscriminatory reasons are mere pretext for what was, in reality, its intentional discrimination. *Id.*

Townsel filed this action on December 10, 2008. At that time, ADEA jurisprudence had held that an ADEA plaintiff had the same ultimate burden of proof that a Title VII plaintiff had, that is, an ADEA plaintiff simply had to prove that age was one motivating factor in the employment decision, among a possible multitude of others. On June 18, 2009, the Supreme Court dramatically changed

the landscape of ADEA litigation with its decision in *Gross v. FBL Financial Services*, ---- U.S. ----, 129 S. Ct. 2343 (2009). As explained by this court in *Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, (N.D. Ala. 2009), "*Gross* holds for the first time that a plaintiff who invokes the ADEA has the burden of proving that the fact that he is over 40 years old was the **only** or the "**but-for**" reason for the alleged adverse employment action." *Id.* at 1271 (emphasis in original). Undoubtedly, Townsel and her lawyers did not anticipate the *Gross* decision any more than this court did. However, both Townsel and this court are bound by Supreme Court decisions, regardless of their timing. Therefore, this court must analyze Townsel's ADEA claim through the familiar *McDonnell-Douglas* framework, but under the newly added burden requirement imposed by *Gross*.

**Townsel's *prima facie* case**

Homewood has conceded that Townsel has presented a *prima facie* case of age discrimination, although the complaint itself does not meet the *Gross* pleading standard. Of course, at the time the complaint was filed, *Gross* had not been decided. (Doc. 24 at 3). Townsel was over the age of forty (40) at the time she was hired and at the time of her non-renewal, and the two replacement teachers were under forty (40). (Doc. 24 at 3). The analysis thus shifts to Homewood's proffered nondiscriminatory reasons for the employment action.

**Homewood's proffered nondiscriminatory reasons.**

Homewood argues that the decision reached by Newton, Winches, and Wilson, a decision adopted by the Board, was made by competent evaluators based on Townsel's poor performance and lack of judgment. In support of its argument, Homewood points to the incidents discussed *supra*, including the special-needs student incident, the "ghetto wedding" incident, Townsel's emails, and Townsel's last two evaluations containing multiple checks in the "needs improvement" column. All of the aforementioned incidents, emails, and evaluations were discussed by Newton, Wilson, and Winches at the meeting in which they reached their decision not to recommend Townsel for renewal. These proffered nondiscriminatory reasons, especially when combined with the heightened scrutiny generally applied by school boards to the tenure decision, are sufficient to shift the burden back to Townsel.

**Townsel's evidence of pretext.**

Townsel attempts to prove pretext by arguing that (1) Homewood's proffered reasons for the employment decision were subjective and were an insufficient basis for non-renewal, and (2) Wilson has a "track record" of hiring employees that are under 40. (Doc. 26 at 30). These arguments, and the scant "evidence" that is alleged to support them, would not likely have survived a Rule 56 motion under the traditional *McDonnel-Douglas* analysis. With the added burden imposed by *Gross,* all possibility of survival

10

disappears.

Townsel's attempt to characterize the defendants' proffered nondiscriminatory reasons as "subjective" or "insufficient" is contradicted by the record. Homewood can, and does, point to multiple objective factual bases for its non-renewal decision. The incidents relied on, repetitively discussed above, include the special-needs student incident, the "ghetto wedding" incident, the multiple e-mails, and the evaluations with poor marks in professionalism and communication. Especially in the tenure-granting context, which involves heightened scrutiny and sensitivity, the incidents relied on by Homewood combine to form an entirely plausible, if not compelling, reason for non-renewal. Tenure decisions involve subjective considerations and do not require objective application of work rules. Furthermore, even if Townsel had evidence to support her conclusory claims that Homewood's proffered reasons were "subjective" or "insufficient", such evidence would not get Townsel any closer to proving that her age was the "but-for" cause of the non-renewal decision any more than it was that she was originally hired only to add a "token" over forty (40) teacher.

Townsel's only evidence that the reasons given by Homewood are pretextual, and that her age was actually the but-for cause for her non-renewal, is Homewood's alleged pattern or practice of hiring younger teachers, not like Townsel's hire. In support of this

11

argument, Townsel offers a list of employees hired during Wilson's two-year tenure as principal of Homewood. (Doc. 26 at 31). The list includes ten names and the employees' ages when hired. *Id.* Of the ten, only one was over forty (40) years old when hired, and she was hired as a counselor, not as a teacher. *Id.* Townsel argues that her list supports an argument that defendants' proffered reasons are pretextual:

> While not true statistical analysis, the information regarding Wilson's choices as to new teacher hires is probative. The simple numerical evidence is probative of Wilson's motivations in making hiring decisions and likewise in decisions as to renewals of contracts.

(Doc. 26 at 32). Townsel's reliance on this "numerical evidence" is misplaced. First, without more information about the applicant pool, the list does not meet threshold standards for proof of Wilson's hiring patterns, and, Wilson is not the defendant here. Homewood points out the likelihood that a majority of the applicants for new teaching positions are under forty (40) years old. Thus, it is entirely possible that Wilson did not even have the opportunity to hire a new teacher over forty (40) years old. As stated, Townsel ignores the fact that the defendant is the Homewood City Board of Education, not Vic Wilson. She also ignores the fact that she is complaining about being non-renewed, and not about being passed over in an initial hiring decision or being fired during probationary status. Townsel's complaint is about a non-renewal decision that was jointly made by Newton, Winches, and

Wilson, and ultimately adopted by the Board. A simple numerical listing of hiring decisions made by Wilson over a two-year period, without more, cannot lead a reasonable fact-finder to find that Townsel's age was the but-for cause of this non-renewal decision.

Townsel does point out that when the non-renewal decision was made, there were two other teachers being considered for tenure, both younger than she, and that both were renewed. (Doc. 26 at 30-31). While this is certainly a better place for Townsel to begin her argument concerning pretext, it is still too-little, too-late. At the time of Townsel's non-renewal, she was fourty-seven (47) years old. The two teachers that were granted tenure were thirty-eight (38) and thirty-five (35) years old, obviously nearing the forty (40) mark. While it cannot be disputed that Townsel, the only teacher over forty (40), was the only non-tenured teacher, this evidence, without more, cannot overcome Homewood's proffered nondiscriminatory reasons. With a sample size of three, and no information on the other teachers' evaluations or performance records, the fact that two younger teachers were granted tenure is not sufficiently probative of pretext. Had Townsel shown that over a number of years teachers under forty (40) were always granted tenure while those over forty (40) were not, she might have a case. Alternatively, had Townsel shown that teachers with evaluations and behavior similar to hers and under forty (40) were granted tenure, she might have a stronger case. Townsel has not provided such

13

evidence. Townsel has provided no evidence whatsoever that her age was the but-for cause of her non-renewal.

Because Townsel has failed to establish a genuine issue of material fact as to whether Homewood's proffered non-discriminatory reasons are pretexual, her ADEA claim cannot survive the Rule 56 motion. Her action will therefore be dismissed with prejudice by separate order.

DONE this 4th day of June, 2010.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE